[No. 10136. Department One. August 17, 1912.]

JAMES N. GRIMES, *Respondent*, v. WILLIAM H. CATHCART, *Appellant*.[1]

HIGHWAYS—COLLISIONS BETWEEN VEHICLES—ACTIONS—QUESTIONS FOR JURY. In an action for personal injuries, the negligence of the defendant in driving into plaintiff's vehicle is for the jury, where defendant made no effort to check his speed and needlessly called for the plaintiff to get out of his way.

DAMAGES—EXCESSIVE VERDICT—PERSONAL INJURIES. A verdict for $2,000 for personal injuries sustained by a farmer fifty-six years of age in good health, will not be set aside as excessive, where he received internal injuries, confining him to the house for three months, and incapacitating him from work up to the time of the trial, ten months after receiving the injuries.

APPEAL — REVIEW — HARMLESS ERROR — INSTRUCTIONS. In an action for personal injuries, it is not prejudicially erroneous to instruct that the jury may take into consideration "the age and condition in life" of the plaintiff, as referring to his financial condition, where there was no evidence of his financial worth.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered June 20, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained in a collision of vehicles. Affirmed.

*Hulbert & Husted*, for appellant.

*Robert McMurchie* and *M. J. McGuinness*, for respondent.

PARKER, J.—This is an action for the recovery of damages for personal injuries which the plaintiff claims resulted to him from the negligence of the defendant. From a verdict

[1]Reported in 125 Pac. 764.

and judgment in favor of the plaintiff, the defendant has appealed.

There was competent evidence given upon the trial tending to show, and sufficient to warrant the jury in believing, the following: In the neighborhood of the homes of appellant and respondent, in Snohomish county, there is a county road which winds down along the side of a steep hill. The roadway is improved about fifteen feet wide at the place where respondent's injuries occurred. At this point, the hill rises on one side of the road and descends upon the other, so that travel is there confined entirely to the improved portion of the road. On July 3, 1910, respondent was driving down this road with one horse hitched to a light buggy. Appellant was following him driving a horse hitched to a heavy milk wagon. Appellant came within view of respondent around a turn in the road at a distance of about 200 feet. Prior to reaching this point, appellant had been driving rapidly, even urging his horse into a run, according to the testimony of one witness. Upon coming to the turn where he could see respondent, appellant continued to drive rapidly down the hill without any effort to check his speed until within a very short distance of the rear of respondent's buggy. As he came to the turn in view of the respondent, he made remarks accompanied by profanity, indicating his intention to proceed recklessly on his course. Upon arriving within fifty feet of respondent, he called to him to get out of his way, and about the same time attempted to check his horse. About this time, a neighbor who was riding with appellant applied the brake on his wagon, which seemed to give way or for some cause refused to work. Respondent, made an effort to get out of the way by turning close to the hillside, but the left shoulder of appellant's horse struck the rear right wheel of the buggy, throwing his horse to the ground and getting his feet entangled in the spokes of the wheel of the buggy, injuring the buggy to some extent though not entirely upsetting it. Just as the horse struck the buggy, respondent,

seeing the impending danger, was proceeding to get out of his buggy, when the shock of the collision threw him to the ground and against one of the wheels of the buggy, causing the injuries for which he now seeks recovery. Respondent's injuries were internal, and did not become manifest until some little time later while he was driving home, when he became sick and dizzy. His injuries caused him to be confined to his house for two or three months thereafter, and he had been practically entirely disabled from his work up to the time of the trial, which occurred ten months after he was injured. He was attended by a physician, and incurred considerable expense on that account. He is a farmer, fifty-six years old, and was, previous to being injured, in good health and fully able to perform his usual farm work. The jury awarded him $2,000 on account of the injuries received.

It is contended that appellant was entitled to judgment notwithstanding the verdict, or in any event to a new trial, upon the ground of the insufficiency of the evidence to render him liable for respondent's injuries. The theory of this contention is that respondent was injured while getting out of his buggy after the collision, and after his buggy had come to rest, and that he was not, therefore, injured by any act of appellant. The answer to this contention is that the testimony was conflicting upon this question, and it was therefore for the jury to decide. There was competent evidence, as we have already noticed, to warrant the jury in believing that the shock of the collision threw respondent from his buggy while he was attempting to get out and escape the apparent impending danger, and there was ample evidence to support the conclusion that the collision was the direct result of appellant's negligent and reckless driving.

It is also contended that the verdict was excessive in amount, and that the respondent should be required to accept a less amount or submit to a new trial. We are satisfied, however, that in view of the nature and extent of respondent's injuries, the amount of the verdict does not suggest such

passion or prejudice on the part of the jury as to call for our interference on that ground. It is true that the extent of respondent's injuries had to be determined by the jury largely upon his own testimony, and his complaints made to his physician from time to time as to his pain and suffering; since his injuries were of that nature which physicians designate as subjective rather than objective; that is, they were not such as could be seen by the physician. An examination made of respondent by other physicians at the time of the trial, according to their testimony, indicates that his health was not then seriously impaired; but, in its last analysis, the nature and extent of respondent's injuries was only a question of fact upon which the evidence was conflicting, and it was therefore for the jury and not the court to decide.

It is contended that the trial court erred in refusing to give certain requested instructions upon the theory of respondent's contributory negligence in not exercising due care to avoid the collision. We find no evidence in the record pointing to any want of care on the part of respondent. It follows that the question of his contributory negligence was not a question for submission to the jury, and therefore of course no instruction was required thereon.

In its instruction to the jury upon the elements of damage which they might take into consideration, the court instructed the jury, among other things, that they might "take into consideration his age and condition in life . . ." This, it is contended, was prejudicially erroneous. Counsel for appellant construe this language as referring to the financial worth of respondent. If that were the meaning of the words "condition in life," as used in the instruction, it would be subject to criticism. For of course that would not be a proper subject of inquiry in such a case. We think, however, that the language as used in the instruction would not convey to the mind of an ordinary juror any such meaning, in view of the fact that the evidence is silent as to the financial worth of respondent. We think the jury was not led to regard the ex-

pression as having any reference to anything more than re-
spondent's age, physical condition, earning capacity, etc.
The Missouri courts have declined to reverse judgments on
the ground of the use of similar expressions in instructions
to juries by trial courts. *Ross v. Kansas City*, 48 Mo. App.
440, 447, and cases cited. While it would have been better
for the court to have omitted from its instructions the words
"condition in life," we think their use under the circum-
stances was not prejudicially erroneous. Other assigned
errors we think are wholly without merit, and do not call
for discussion.

The judgment is affirmed.

MOUNT, CROW, GOSE, and CHADWICK, JJ., concur.